United States Court of Appeals,

Fifth Circuit.

No. 92-4435.

Bennie Ray FOLKS and Ernestine Folks, Plaintiffs-Appellees,

and

Liberty Mutual Ins. Co., Intervenor-Appellee,

v.

KIRBY FOREST IND. INC., Defendant-Third Party Plaintiff and Third Party Defendant-Appellant,

v.

HOOD INDUSTRIES INC., Defendant-Third Party Plaintiff and Third Party Defendant-Appellee,

v.

Johnny KNIGHT, dba, Knight's Machinery Removal, Third Party Defendant-Appellee.

Jan. 11, 1994.

Appeal from the United States District Court for the Eastern District of Texas.

Before JOHNSON, SMITH, and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

This is an appeal from a jury verdict for the plaintiff in a personal injury case. The jury awarded Bennie Ray Folks $1,076,000 in damages, finding that he was injured in an industrial accident as a result of the negligence of Kirby Forest Industries, Inc. ("Kirby"). Kirby appeals, and we vacate and remand on account of an erroneous jury instruction and the erroneous exclusion of evidence.

I

Kirby operated a plywood plant in Silsbee, Texas. When the plant closed, Kirby held an "as is, where is" auction sale to liquidate the plant equipment. According to the terms of the "as is, where is" sale, purchasers took property without any warranties or representations of quality. Purchasers were also responsible for transporting their purchases away from the Silsbee site.

Representatives of Hood Industries, Inc. ("Hood") attended the auction sale and purchased a machine or set of machines known as a glue line. Thereafter Hood hired Knight's Machinery Removal ("Knight") to cut the glue line into pieces at the Silsbee plant, load it onto a truck, and carry it to Hood's sawmill in another city. During the disassembly of the glue line, Bennie Ray Folks, an employee of Knight, was injured when the accumulator forks—a part of the glue line—fell from a raised position and landed on top of him. The forks were normally supported in the raised position by a hydraulic lift system, but that system was inoperative because of lack of hydraulic fluid. Folks suffered permanent and disabling injuries as a result of being crushed under the accumulator forks.

Folks and his wife, Ernestine Folks, filed suit against Kirby, alleging negligence under a theory of premises liability.[1] The Folkses sued Hood and Knight as well, alleging that they negligently caused Bennie Folks' injuries. Both Kirby and Hood filed claims for contribution and indemnity against each other and against Knight. Liberty Mutual Fire Insurance Company intervened to recover its workers' compensation lien, but it was later dismissed for failure to appear. At trial Knight was granted an instructed verdict, because it was statutorily immune as Folks' employer.[2] A take-nothing judgment was entered in favor of Hood and Knight. The jury found Kirby 95% negligent, Hood 0% negligent, and Folks 5% negligent. It awarded damages to Folks of $1,076,000.00, and to his wife in the amount of $30,000.00. Kirby appeals.

## II

## A

Kirby argues that the district court erred by failing to give a requested jury instruction. According to Kirby, the district court was required by Texas law to instruct the jury not to find Kirby liable unless (1) Kirby knew or should have known about a dangerous condition on its premises, and (2) Kirby should have realized that the condition posed an unreasonable risk of harm to its invitees.

[1] Folks' first amended complaint alleged that "Kirby is liable to Bennie Ray Folks for its failure to provide a safe place to work. Specifically, Kirby had a non-delegable duty to inspect its premises to discover dangerous conditions and to warn invitees of hidden dangers." Record on Appeal, vol. 1, at 249.

[2] Neither the instructed verdict in favor of Knight nor the dismissal of intervenor Liberty Mutual Fire Insurance Company is challenged on appeal.

"In diversity actions, federal court jury instructions must accurately describe the applicable state substantive law."[3] *Turlington v. Phillips Petroleum Co.,* 795 F.2d 434, 441-42 (5th Cir.1986). We review de novo a district court's determination of a question of state law. *City Pub. Serv. Bd. v. Gen. Elec. Co.,* 935 F.2d 78, 80 (5th Cir.1991) (citing *Salve Regina College v. Russell,* 499 U.S. 225, 238, 111 S.Ct. 1217, 1225, 113 L.Ed.2d 190 (1991)), *modified on other grounds,* 947 F.2d 747, 748 (5th Cir.1991). " "A party is entitled to reversal for a district court's failure to give a particularly requested instruction only if the jury was misled by the instructions that were actually given.' " *Pierce v. Ramsey Winch Co.,* 753 F.2d 416, 425 (5th Cir.1985). "[W]e afford our district courts latitude in presenting state law *as long as that presentation is substantively correct.*" *Turlington,* 795 F.2d at 442 (emphasis added).

At trial Kirby requested that the jury be given the following instruction:

> You are instructed that with regard to the liability of the premises owner, Kirby Forest Industries, Inc., for the Plaintiff to establish negligence, the Plaintiff must prove that there was a condition on the property and that Kirby Forest Industries, Inc., either created or discovered the condition or by reasonable care should have discovered the condition, and should realize that it involved an unreasonable risk of harm to invitees, and that Kirby Forest Industries, Inc., failed to exercise reasonable care to protect the invitees against the danger.

Record on Appeal, vol. 2, at 680. The district court refused Kirby's request and did not instruct the jury that Folks was required to prove Kirby's actual or constructive knowledge of a dangerous condition on its premises.[4]

---

[3]Federal courts sitting in diversity, such as the district court in this case, apply the substantive law of the forum state. *See Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

[4]The district court instructed the jury as follows:

> [T]he claim being asserted by the plaintiff is based on what we call negligence.... Negligence is the doing of some act which a reasonably prudent person would not do or the failure to do something which a reasonably prudent person would do when prompted by considerations which ordinarily regulate the conduct of human affairs. It is, in other words, failure to use ordinary care under the circumstances in the management of one's person or property or of agencies under one's control.
>
> Plaintiff alleges that the conduct of Kirby Forest Industries, Incorporated at the time and place in question was negligent in the following particulars. One, by Kirby Forest Industries, Incorporated['s] failure to provide a safe place to work for the plaintiff Bennie Ray Folks. Two, in failing to warn the plaintiff Bennie Ray

Kirby's requested instruction is based on § 343(a) of the Restatement of Torts. *See* Restatement (Second) of Torts § 343 (1965). Section 343 states:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger.

In *Adam Dante Corp. v. Sharpe,* 483 S.W.2d 452 (Tex.1972), the Supreme Court of Texas adopted § 343 as a summary of the duty which an occupier of premises owes to its invitees.[5] *See id.* at 454-55.[6] Later, in *Corbin v. Safeway Stores, Inc.,* 648 S.W.2d 292 (Tex.1983), the Texas Supreme Court rearticulated the duty described in § 343 in terms of four elements which an invitee must prove in order to establish liability on the part of an occupier of premises: (1) the occupier had actual or constructive knowledge of some condition on the premises; (2) the condition posed an unreasonable risk of harm to the invitee; (3) the occupier did not exercise reasonable care to reduce or to eliminate the risk; and (4) the occupier's failure to use such care proximately caused the invitee's injuries. *See id.,* 648 S.W.2d at 296. "[A]ppropriate instructions in a premises liability case must incorporate the

---

> Folks of the dangerous condition of the accumulator; and failing to place the accumulator in zero mechanical state when the plywood plant ceased operations.
>
> In order to prove the essential elements of plaintiff's claim the burden is on the plaintiff to establish by a preponderance of the evidence in the case the following facts. First, that the defendants were negligent in one or more of the particulars alleged. Second, that the defendant's negligence was a proximate cause of the injuries and consequent damages sustained by the plaintiff.

Record on Appeal, vol. 2, at 528-30.

[5]The Supreme Court of Texas has since held that subsection (b) of § 343 is no longer applicable in Texas. *See Parker v. Highland Park, Inc.,* 565 S.W.2d 512, 517 (Tex.1978) (expressly abolishing "no duty" doctrine); *see also Corbin v. Safeway Stores, Inc.,* 648 S.W.2d 292, 295 n. 1 (Tex.1983) (stating that subsection (b) "is no longer applicable in Texas" (citing *Parker* )).

[6]*See also Corbin v. Safeway Stores, Inc.,* 648 S.W.2d 292, 295 (Tex.1983) (quoting § 343 and citing *Adam Dante Corp.); Rosas v. Buddie's Food Store,* 518 S.W.2d 534, 536-37 (Tex.1975) (same).

four *Corbin* elements." *Keetch v. Kroger Co.,* 845 S.W.2d 262, 266 (Tex.1992).

We conclude that Kirby owed Folks the duty which an occupier of premises owes to its invitees, as articulated in *Corbin.* It is undisputed that Kirby was the possessor of the premises at the Silsbee plant when Folks was injured, and we hold that Folks was Kirby's invitee.[7] Furthermore, Kirby's liability in this case was premised on the existence of a dangerous condition on its premises.[8] Therefore, the district court was required to instruct the jury on the duty owed by an occupier of premises to its invitee, as described in *Corbin. See Keetch,* 845 S.W.2d at 266 ("[A]ppropriate instructions in a premises liability case must incorporate the four *Corbin* elements.").

Folks and Hood contend, nonetheless, that "premises liability principles need not apply" to this case because Kirby could have been found liable alternatively on the basis of simple negligence. We disagree. Although *Corbin* states that "an invitee's suit against a store owner is a simple negligence action," it also states that § 343 of the Restatement "tailors the traditional test of the conduct of a reasonably prudent person to a specific category of defendants, namely, premises occupiers. Consequently, an occupier's liability to an invitee depends on whether he acted reasonably *in light of what he knew or should have known about the risks accompanying a premises condition*."

---

[7]"An invitee has been described as one who enters on another's land with the owner's knowledge and for the mutual benefit of both." *Rosas v. Buddie's Food Store,* 518 S.W.2d at 536. Texas courts have treated employees of independent contractors as invitees. *See Smith v. Henger,* 148 Tex. 456, 464, 226 S.W.2d 425, 431 (Tex.1950) ("The law places upon the owner or occupant of land the duty to use reasonable care to make and keep the premises safe for the use of persons invited to use the premises for business purposes. Included within the class of persons to whom this duty is owed are the employees of contractors performing construction or other work on the premises."). It is undisputed that Kirby knew about Folks' entry onto the premises. Furthermore, Folks' entry onto the premises was of mutual benefit to him and Kirby: Kirby benefited from the sale of the glue line to Hood; the terms of the sale required that the machinery be removed from the premises; and Folks was on Kirby's premises to help remove the glue line.

[8]Folks was injured because the accumulator forks of the glue line were in a dangerous condition—raised, but unsupported by the hydraulic system. The fact that the dangerous condition resulted from some negligent conduct does not mean that Folks was injured by the negligent conduct rather than the dangerous condition. *See Keetch,* 845 S.W.2d at 264 ("At some point, almost every artificial condition can be said to have been created by an activity.... Recovery on a negligent activity theory requires that the person have been injured by or as a contemporaneous result of the activity itself rather than by a condition created by the activity.").

*See Corbin,* 648 S.W.2d at 295 (emphasis added).[9]

Folks' and Hood's argument is also foreclosed by the Texas Supreme Court's recent decision in *H.E. Butt Grocery Co. v. Warner,* 845 S.W.2d 258 (Tex.1992). Warner was shopping at an H.E.B. grocery store when she slipped in a puddle of blood and water which had formed near the "bag your own chicken" counter. *See id.* at 258. Warner sued H.E.B. to recover damages for her injuries, and the trial court entered a take-nothing judgment. *See id.* at 258-59. The court of appeals reversed, because the trial court had submitted only a premises liability question to the jury, and had not submitted Warner's simple negligence theory—that H.E.B. negligently failed to bag chickens for its customers. *See id.* The Supreme Court of Texas reversed the decision of the court of appeals, holding that "it [was] undisputed that [Warner] was injured by a condition of the premises," and "[t]hus, Warner's only potential cause of action [was] limited to a premises liability theory." *Id.* (citing *Keetch* ). Likewise in this case, Folks was injured by a dangerous condition on Kirby's premises.[10] Therefore, under *Warner* Folks' only basis for recovery is premises liability.[11] *See id; see also Stanley Stores, Inc. v. Veazey,* 838 S.W.2d 884, 886 (Tex.App.—Beaumont 1992) (reversing judgment for defendant where plaintiff's injury resulted from dangerous condition of

---

[9]Folks contends that *Corbin* is distinguishable because it is a slip and fall case and this case is not. However, the holding in *Corbin* was not limited to slip and fall cases. *See id.,* 648 S.W.2d at 295. *Corbin* stated that § 343 of the Restatement describes "the duty of reasonable care that an occupier of premises owes to invitees." *Id.* On its face this holding applies to all occupiers of premises and their invitees, regardless of the type of injury which may occur. Furthermore, Texas courts have applied *Corbin* outside the slip and fall context. *See Wal-Mart Stores, Inc. v. Berry,* 833 S.W.2d 587, 592 & n. 2 (Tex.App.—Texarkana 1992, writ requested) (stack of canned drinks fell on shopper); *EDCO Prod., Inc. v. Hernandez,* 794 S.W.2d 69, 72 (Tex.App.—San Antonio 1990, writ denied) (oil storage tank explosion); *see also Hathaway v. Tascosa Country Club, Inc.,* 846 S.W.2d 614, 617 (Tex.App.—Amarillo 1993, no writ) (citing *Adam Dante Corp.* and applying Rest. § 343 to case involving golfing accident). Consequently, it is of no consequence that this is not a slip and fall case.

[10]*See supra* note 8.

[11]Neither *Exxon Corp. v. Quinn,* 726 S.W.2d 17 (Tex.1987), nor *City of Denton v. Van Page,* 701 S.W.2d 831 (Tex.1986), nor *Phelan v. Lopez,* 701 S.W.2d 327 (Tex.App.—Beaumont 1985, no writ), upon which Hood and Folks rely, is to the contrary. The trial courts' instructions regarding the actual or constructive knowledge of the defendants was not an issue in any of those cases. As a result, it is not clear from those opinions whether a premises liability instruction complying with *Corbin* was given or not, and those decisions offer no support for the proposition that an instruction on Kirby's actual or constructive knowledge was not required here.

premises and trial court failed to instruct jury as required by *Corbin* (citing *Keetch* )).

Hood also contends that "there was no need to instruct the jury that it must be proved that Kirby created or discovered or should have discovered the condition [of the accumulator forks], because it was indisputable that Kirby [created] the condition." Hood is mistaken. Even assuming *arguendo* that Kirby indisputably created the dangerous condition of the forks, we would not be persuaded that an instruction on actual or constructive knowledge was unnecessary here. In *Keetch,* the Supreme Court of Texas rejected the argument that "if [the premises occupier] created the condition then [it] is charged with knowledge of the condition as a matter of law." *See id.,* 845 S.W.2d at 265. The court stated:

> The fact that the owner or occupier of a premises created a condition that posed an unreasonable risk of harm may support an inference of knowledge. However, the jury still must find that the owner or occupier knew or should have known of the condition. Making the inference as a matter of law is improper unless knowledge is uncontroverted.

*Id.* (footnote and citation omitted). In light of this holding, Hood's argument is without merit.

We therefore conclude that the district court's instruction was incorrect and entitles Kirby to reversal. Kirby should not have been held liable for Folks' injury unless it knew or should have known that a dangerous condition existed on its premises. Because the district court failed to instruct the jury to that effect, the judgment of the district court must be vacated and this case remanded for a new trial. *See Pierce,* 753 F.2d at 425 (" "A party is entitled to reversal for a district court's failure to give a particularly requested instruction ... if the jury was misled by the instructions that were actually given.' ").

B

Kirby further argues that the district court erred by failing to instruct the jury to consider the terms of the equipment sale. Although the district court admitted into evidence several documents which showed that Kirby sold the glue line "as is," as well as testimony regarding the meaning of that term, the district court refused Kirby's request for the following jury instructions:

> You are instructed that in considering the liability of Kirby Forest Industries, Inc. you may take into consideration the fact that the machinery was sold "as is" to Hood Industries, Inc.

Record on Appeal, vol. 2, at 713.

You are instructed that the hydraulic accumulator, the machinery involved in this case, was sold "as is" in an auction on November 14, 1989, by Kirby Forest Industries, Inc. The term "as is" as used at the auction means that Kirby made no representations as to the condition of the equipment. The machinery could have been in a new or used condition. The machinery could have been in a safe or unsafe condition. The machinery could have been in a working or nonworking condition.

*Id.* at 731.

The district court did not err in refusing to give these instructions. Since the terms of the sale—that Kirby sold the machinery "as is"—were admitted into evidence, the first requested instruction would have been superfluous. That instruction merely states what is implicit in the admission of the sale terms into evidence—that the terms may be considered by the jury in reaching a verdict.[12] The second requested instruction was unnecessary as well, because it merely stated the meaning of the term "as is," which was already substantially established by the evidence.[13] Because

---

[12]The district court instructed the jury to "find the facts in accordance with a preponderance of *all the evidence in the case....*"

[13]John Galloway, president of Hood Industries, testified as to his understanding of the term "as is":

> Q That meant to you what?
>
> A That you were buying a piece of machinery ... and you didn't know if it ran or didn't run. There was no way to test it or try it because there was no power to it. We were never able to run it, so we didn't know if the pipes were plugged or if the motors would operate or whatever.
>
> Q As far as the structural integrity of the thing what all was good or what all would have to be replaced you didn't know that.
>
> A No.
>
> Q That, of course, was why you were able to buy it at a price much lower than the price of new equipment.
>
> A Right. Plus it was used. It had wear and tear.
>
> Q And among other things [as is] meant to you that even if you found out or your engineers when they looked at the [glue] line, if you found out that some motors weren't working or steel structure was weak and going to have to be braced up or replaced or the hydraulic weren't working or stuff was bent no matter what you found and how bad it was, that was a chance that you all were taking?
>
> A That's exactly right.

Record on Appeal, vol. 4, at 465, 470.

the requested instructions were unnecessary, the district court did not err by denying them.

However, Kirby also contends that the district court erred in responding to a question from the jury regarding the terms of the equipment sale. During deliberations the jurors inquired whether "the terms of sale [were] legal and binding in the State of Texas." *See id.* The jurors specifically referred to item number six in the auction catalog, which stated:

> Everything will be sold on an as-is basis without any warranty or representation whatsoever.... Purchaser agrees to pay all costs of removal and purchaser does hereby indemnify and hold harmless auctioneers and seller for any and all damage, claim, or liability for injuries to persons or property caused by the removal of items purchased.

The district court responded:

> The terms of the auction sale should not concern the Jury and is not an issue for the Jury to decide. The Terms of Sale (Item 6) is an agreement between Kirby and Hood and does not involve the Plaintiff, Folks, and the Defendants.

Kirby contends that the district court, by so instructing the jury, forbade the jury to consider the "as is" term of the sale, effectively excluding it from evidence. Kirby contends that this was error, entitling it to reversal and a new trial on the issue of apportionment of negligence between it and Hood.

Hood responds initially that the district court did not exclude the "as is" term of the sale from evidence. According to Hood, Kirby's argument "misconstrues the district court's action.... The jury was told, in effect, that it was not to decide whether the terms of the contract were legal and binding. It was also told, in effect, that the contract terms did not affect the question before the jury, which was whose conduct was negligent in causing Folks's injury." Hood's argument virtually concedes Kirby's point, as there is little if any practical difference between excluding the "as is" term from evidence and telling the jury that that evidence does not affect the question before it. The district court instructed the jury that the "terms of the auction sale should not concern [it]," and the jury reasonably could have understood, and probably did understand, that instruction to mean that the "as is" term of the sale should be disregarded. As a result, we view the district court's instruction to the jury as a ruling excluding evidence.

"The trial court's discretion to admit or exclude evidence is generally broad, but competent evidence cannot be excluded without a sound and acceptable reason." *Davidson Oil Country Supply*

*v. Klockner, Inc.,* 908 F.2d 1238, 1245 (5th Cir.1990), *on rehearing,* 917 F.2d 185 (5th Cir.1990). "All relevant evidence is admissible in a jury trial, unless its probative value is outweighed by, for example, the danger of unfair prejudice or confusion of the issues...." *Id.* (citing Fed.R.Evid. 402, 403).

Kirby contends that the terms of the sale tend to establish Hood's liability, and therefore Kirby's non-liability, for some percentage of Folks' damages. According to Kirby, "[t]he jury rationally might expect Kirby to do less by way of pre-sale inspection or preparation in an "as is' sale." Furthermore, "[t]he jury could expect that Hood would take certain action in inspecting and preparing the equipment for dismantling," since Hood purchased the equipment "as is" and had received neither warranties nor representations of quality from Kirby.[14] In essence Kirby contends that the terms of the sale were circumstances which the jury should have considered in deciding what degree of care an ordinarily prudent person would have exercised "under the circumstances."[15] *Cf. Levrie v. Dep't of Army,* 810 F.2d 1311, 1316 (5th Cir.1987) ("Because the contract required Williams to provide trained employees and to clean up hazardous spills, the government employee was not negligent in looking to the Williams employees to alleviate the problem.").

We agree. The fact that the glue line was sold "as is" is probative of the parties' knowledge of the condition of the equipment. As a result, evidence of those terms has a "tendency to make the existence of [a] fact that is of consequence to the determination of the action"—the negligence of Kirby or Hood—"more probable ... than it would be without the evidence." Fed.R.Evid. 401 (defining relevant evidence). We therefore conclude that the "as is" terms of the sale constituted relevant, admissible evidence.[16] *See* Fed.R.Evid. 402 ("All relevant evidence is admissible, except as

---

[14]Kirby does not contend that its liability for Folks' injuries is contractually limited by virtue of the aforementioned sale terms.

[15]*See Vargas v. City of San Antonio,* 650 S.W.2d 177, 179 (Tex.App.—San Antonio 1983, writ dism'd) (defining negligence as "failure to do that which a person of ordinary prudence would have done under the same or similar circumstances, or doing that which a person of ordinary prudence would not have done under the same or similar circumstances").

[16]According to the dissent, we "hold[ ] today that, in the presence of an "as is' clause, a prudent buyer is obligated to exercise greater care concerning the product's safety[,] and the seller is excused when the buyer fails to exercise that greater amount of care." We respectfully disagree

otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority.").

Hood contends, however, that the district court's action was proper because otherwise the jury might have mistakenly treated the terms of the sale as a binding indemnification agreement.[17] The Supreme Court of Texas has held that "parties seeking to indemnify the indemnitee from the consequences of its own negligence must express that intent in specific terms." *Ethyl Corp. v. Daniel Constr. Co.,* 725 S.W.2d 705, 707 (Tex.1987). Item six of the auction catalog stated that the "purchaser does hereby indemnify and hold harmless auctioneers and seller for any and all damage, claim, or liability for injuries to persons or property caused by the removal of items purchased." Although it appears from this language that Hood agreed to indemnify Kirby for any injuries caused by the removal of the glue line, *Ethyl Corp.* held that an agreement such as this one, which does not explicitly mention negligence, is not effective as to negligence. *See id.* Hood argues that, in the absence of the district court's instruction, the jury might have treated the language in item six as a binding indemnification agreement, in direct violation of the rule set out in *Ethyl Corp.* Therefore, Hood argues, the district court did not err in instructing the jury that the sale terms did not concern them.

First of all, the record does not indicate that the district court responded to the jury's question as it did because of the concerns raised by Hood. More importantly, however, those concerns would not have justified the district court in excluding from the jury's consideration all of the terms of the sale. The district court could have simply instructed the jury that the indemnification clause was not enforceable under Texas law,[18] which still would have permitted the jury to consider the "as is" term

with this characterization of our holding, since we do not hold that the duty of care owed by a buyer necessarily changes in the presence of an "as is" clause. We simply hold that an "as is" clause is a probative fact which the jury is entitled to consider when deciding whether a party acted as a reasonable person would act under the circumstances.

[17]*See* Fed.R.Evid. 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury....").

[18]Contrary to Hood's argument, a lengthy and confusing legal instruction was not necessary to prevent the jury from enforcing the indemnification clause.

of the sale.[19]  Because that alternative, among others, was available to the district court, we conclude that the district court abused its discretion by instructing the jury to disregard the terms of the equipment sale.  *See Klockner,* 908 F.2d at 1245 ("The trial court's discretion to admit or exclude evidence is generally broad, but competent evidence cannot be excluded without a sound and acceptable reason.").

Kirby emphasized the "as is" nature of the sale in its defense at trial;  and, as we already stated, we agree with Kirby's argument that evidence of the "as is" nature of the sale might persuade the jury to apportion some liability for Folks' injuries to Hood.  The erroneous exclusion of evidence of the sale terms therefore also requires reversal and a new trial.  *See* Fed.R.Evid. 103(a) ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected....");  *Klockner,* 908 F.2d at 1245 (reversing and remanding where "exclusion [of relevant evidence] seriously hindered the presentation of [a party's] case") (citing Fed.R.Evid. 103(a)).[20]

C

Kirby also contends that the district court erred by denying its motion for judgment as a matter of law.  Kirby contends that it is entitled to judgment as a matter of law because the evidence presented at trial was insufficient to prove that (1) the condition of the accumulator forks was a hidden dangerous condition, which Kirby knew or should have known Hood would not discover; and (2) the hidden condition existed at the time the glue line was sold to Hood.

Kirby's argument is derived from the rules governing liability of sellers of land for dangerous

[19]We respectfully disagree with the dissent's assertion that we are attempting to evade the requirements of *Ethyl Corp. v. Daniel* by giving the "as is" clause the effect of an indemnification agreement.  *See* Dissenting Opinion at n. 4.  As we have indicated, the jury must be instructed not to give the sale terms any effect which, as a matter of Texas law, they do not have.  The jury should, however, be permitted to consider the terms of the sale as evidence of the events leading up to, and the circumstances surrounding, Folks' accident.

[20]Because we reverse on other grounds, we need not address the following arguments:  (a) that Kirby is entitled to a new trial because the jury's verdict apportioning 07 negligence to Hood is against the great weight of the evidence;  (b) that Kirby is entitled to either a new trial or a remittitur because the evidence was insufficient to support the jury's award of $876,000 in future damages;  and (c) that Kirby is entitled to a new trial because the district court failed to instruct the jury properly concerning the duty Kirby owed to an employee of an independent contractor.

conditions on the land. Texas courts have held that "a vendor of land is not subject to liability for physical harm caused[,] ... after the vendee has taken possession [of the land,] by any dangerous condition ... which existed at the time that the vendee took possession." *Beall v. Lo-Vaca Gathering Co.,* 532 S.W.2d 362, 365 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n.r.e.) (quoting Restatement (Second) of Torts § 352 (1965)). However,

> A vendor of land who conceals or fails to disclose to his vendee any condition ... which involves unreasonable risk to persons on the land, is subject to liability to the vendee and others upon the land with the consent of the vendee or his subvendee for physical harm caused by the condition after the vendee has taken possession, if
>
> > (a) the vendee does not know or have reason to know of the condition or the risk involved, and
> >
> > (b) the vendor knows or has reason to know of the condition, and realizes or should realize the risk involved, and has reaso n to believe that the vendee will not discover the condition or realize the risk.

*Id.* (quoting Rest. (2d) Torts § 353(1)); *see also First Fin. Dev. Corp. v. Hughston,* 797 S.W.2d 286, 293 (Tex.App.—Corpus Christi 1990, writ denied) (noting that transferor of land is not liable for dangerous condition on land "where the transferee discovers or should have discovered the dangerous condition" (citing *Beall;* Rest. (2d) Torts §§ 351-53)); *Moeller v. Fort Worth Capital Corp.,* 610 S.W.2d 857, 861 (Tex.App.—Fort Worth 1981, writ ref'd n.r.e.) (citing *Beall;* Rest. (2d) Torts § 353). Kirby argues that it should be held to the same duty which a seller of land owes, since it sold the glue line to Hood before Folks was injured.

It is undisputed that this case did not involve a sale of land—Kirby concedes that it was the owner of the premises where Folks was injured—and Kirby does not argue that the rules governing vendors of land are directly controlling here. Kirby merely draws an analogy between sales of land and sales of personal property, such as the glue line, and argues that "a prior owner of personal property should be treated similarly to a prior landowner." Kirby does not point to any authority which supports its position,[21] but merely contends that, "[a]s a matter of logic," the rules which

---

[21]Kirby relies on *Beall v. Lo-Vaca Gathering Co., United States v. Inmon,* 205 F.2d 681, 684 (5th Cir.1953), *Graham v. United States,* 441 F.Supp. 741 (N.D.Tex.1977), and *Devers v. Mobil Chem. Corp.,* 488 F.2d 258, 260 (5th Cir.), *cert. denied,* 417 U.S. 947, 94 S.Ct. 3073, 41 L.Ed.2d 667 (1974), but none of these supports Kirby's argument. *Beall, Inmon,* and *Graham* all clearly dealt with sales of realty. While *Devers* involved personal property, the defendant

govern vendors of realty should govern vendors of personalty.

Because federal jurisdiction in this case is premised on diversity, the district court was required to rule as the Texas courts most likely would rule if presented with Kirby's argument. *See Mozeke v. Int'l Paper Co.,* 856 F.2d 722, 724 (5th Cir.1988) ("Since this case was removed to a federal forum on the basis of diversity of citizenship, we sit as an *Erie* court, and must apply Louisiana law, attempting to rule as a Louisiana court would if presented with the same issues."). We review de novo a district court's determination of a question of state law. *See Salve Regina College v. Russell,* 499 U.S. at 238, 111 S.Ct. at 1225 (holding that "courts of appeals [must] review the state-law determinations of district courts *de novo*"). We are not aware of any decision of a Texas court which has considered Kirby's argument or one similar to it,[22] and a federal court sitting in diversity cannot expand or make innovations in the laws of the State of Texas. *See City Pub. Serv. Bd. v. Gen. Elec. Co.,* 947 F.2d 747, 748 (5th Cir.1991) ("[I]t is not for this court—*Erie*-bound to apply state law as state courts would do—to incorporate ... innovative theories of recovery into Texas law." (citing *Mayo v. Hyatt Corp.,* 898 F.2d 47, 49 (5th Cir.1990))); *Mitchell v. Random House, Inc.,* 865 F.2d 664, 672 (5th Cir.1989) ("We will not create this tort for Mississippi."); *Devers v. Mobil Chem. Corp.,* 488 F.2d 258, 260 (5th Cir.1974) ("While Devers' interpretation of

---

remained in possession of the personalty at the time of the plaintiff's injury. *See Devers,* 488 F.2d at 259.

[22]In several Texas cases premises owners have been sued because of the dangerous condition of personal property which was located on the premises but which did not belong to the premises owner. *See Bryant v. Gulf Oil Corp.,* 694 S.W.2d 443 (Tex.App.—Amarillo 1985, writ ref'd n.r.e.) (where plaintiff's injury resulted from contact with utility company's power lines on defendant's premises); *J.A. Robinson Sons, Inc. v. Ellis,* 412 S.W.2d 728 (Tex.Civ.App.—Amarillo 1967, writ ref'd n.r.e.) (where plaintiff's decedent was killed when independent contractor's chain and cable broke during unloading of equipment at premises occupied by defendant); *Perez v. Hernandez,* 317 S.W.2d 81 (Tex.Civ.App.—San Antonio 1958, writ ref'd n.r.e.) (where plaintiff was injured by independent contractor's tire repair machine, which was operated on defendant's premises). However, none of those decisions relied on the fact that the occupier of the premises did not own the personal property. All three cases were decided on the basis of the rule that a possessor of premises has no duty to protect independent contractors from dangers arising from the performance of their work. *See Bryant,* 694 S.W.2d at 446; *Ellis,* 412 S.W.2d at 736; *Perez,* 317 S.W.2d at 83. The *Bryant* court also relied upon the fact that the defendant had no control or supervision over the dangerous personal property. *See Bryant,* 694 S.W.2d at 447. Therefore, we do not regard those cases as either supporting or foreclosing Kirby's argument.

Texas law is not completely foreclosed by the cases, it would most certainly be an expansion of established principles. It is not our function to expand the law of Texas."). To apply the rules governing vendors of realty to cases involving vendors of personalty—which the Texas courts apparently have not chosen to do—would amount to an expansion of Texas law. Because it is not the place of federal courts sitting in diversity to impose such alterations on the laws of the State of Texas, the district court properly denied Kirby's motion for judgment as a matter of law.[23]

### III

For the reasons stated *supra* in Parts II.A. and B., we vacate the judgment of the district court and remand for a new trial.

JOHNSON, Circuit Judge, concurring in part and dissenting in part:

The majority herein is correct in holding that this case must be reversed and remanded because the jury was not properly instructed as to the elements of recovery under a premises liability theory. This writer also agrees that a federal court sitting in diversity should not adopt the novel defense presented by Kirby that would apply the law governing vendors of real estate to vendors of personal property. Accordingly, this writer concurs with Parts IIA and IIC of the majority's opinion. However, in my view, the majority goes astray in Part IIB by allowing a disclaimer of warranties to affect the respective tort duties between the defendants. Hence, I respectfully dissent from this portion of the majority's opinion.

### *DISCUSSION*

### THE *AS IS* CLAUSE

---

[23]Kirby also contends that the district court should have instructed the jury not to find Kirby negligent unless (1) the condition of the accumulator forks was a hidden dangerous condition, which Kirby knew or should have known Hood would not discover; and (2) the hidden condition existed at the time the glue line was sold to Hood. Because these requested instructions are based on the law governing vendors of realty, *see Beall,* 532 S.W.2d at 365, which we refuse to transplant into an area of Texas law where it has not been applied before, we find no fault with the district court's decision to refuse Kirby's requested instructions. *See Pierce,* 753 F.2d at 425 ("When an objection is made to the failure to give a requested instruction, the correctness of the proposed instruction must ... be shown as a threshold matter.").

Without considering the "as is" nature of the sale of this equipment,[1] the jury found that Kirby, the seller and premises owner, was 95% negligent; that Hood, the buyer, was 0% negligent; and that Folks, the plaintiff, was 5% negligent. The issue to be decided herein is whether consideration of the "as is" provision in the sale of this equipment from Kirby to Hood can affect that apportionment of tort liability. In Part IIB of its opinion, the majority concludes that it does.

In the majority's view, an "as is" provision acts not only to disclaim any implied warranties under the sales contract, but it also spills over into the tort realm by changing the relative standards of care owed by the defendants. The majority reaches this conclusion because it believes that selling a product "as is" makes a negative comment about that product's *safety*. Hence, the majority holds today that, in the presence of an "as is" clause, a prudent buyer is obligated to exercise greater care concerning the product's safety and the seller is excused when the buyer fails to exercise that greater amount of care.[2]

This holding not only has no support whatsoever in Texas law, but it is also completely wrong. The product's safety is a tort concern. Contrary to the majority's holding, warranties, and more specifically here, "as is" clauses, have always been focused on the product's value and not the product's safety. *See East River S.S. Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, 872, 106 S.Ct. 2295, 2303, 90 L.Ed.2d 865 (1986).

Under the Commercial Code, warranties are designed to provide a remedy when a product fails to measure up to the seller's representations of quality. *Mid-Continent Aircraft Corp. v. Curry County Spraying Service, Inc.,* 572 S.W.2d 308, 313 (Tex.1978); *Nobility Homes of Texas, Inc. v.*

---

[1]The majority contends that the trial judge's actions effectively removed from the jury's consideration evidence as to the "as is" nature of the sale. For purposes of this dissent, this will be taken as true.

[2]The majority takes issue with this characterization of its holding. Specifically, the majority states that it is not holding that the duty of care "owed by a buyer *necessarily* changes in the presence of an "as is' clause." Maj. op. at n. 16 (emphasis added). This equivocal statement is unlikely to ease a buyer's fears because the only possible effect of this evidence is for juries to raise the buyer's duty and lessen the seller's. The only comfort that the majority offers buyers is that the majority does not *mandate* that juries do so.

*Shivers,* 557 S.W.2d 77, 80 (Tex.1977). Disclaiming warranties by an "as is" clause[3] only indicates that the seller makes no implied representation that the product will perform satisfactorily thus shifting the economic risk of product *quality* from the seller to the buyer. Tex.Bus. & Com.Code Ann. § 2.316(c)(1) (Tex. UCC) (Vernon 1968); *See also Mid-Continent,* 572 S.W.2d at 313. Indeed, this Court has recognized that a disclaimer of contractual warranties does not affect claims based on negligence. *Illinois C.G.R. Co. v. Pargas, Inc.,* 722 F.2d 253, 255 (5th Cir.1984).[4]

In short, when a seller sells a product "as is," he negates implied warranties. The seller does *not* avoid liability for his own negligence. In order for the seller to shift liability for the consequences of his own negligence, in Texas he must express that intent in specific terms in the contract. *Ethyl Corp.,* 725 S.W.2d at 708.[5]

Lastly, to allow an "as is" disclaimer of warranties to affect tort duties under Texas law would improperly blend tort and contract in the products area. Texas courts have consistently attempted to keep these theories distinct. *Garcia v. Texas Instruments, Inc.,* 610 S.W.2d 456, 451 (Tex.1980); *Nobility Homes,* 557 S.W.2d at 80; *Mid-Continent,* 572 S.W.2d at 312. Sitting in diversity, this Court has no authority to do that which the Texas courts have determined to be inappropriate. This Court should not mix apples and oranges of tort law and warranty law. Thus, in this writer's view, the district court did not err at all in instructing the jury that the contract provisions were not relevant.

*CONCLUSION*

---

[3]Absent an "as is" or similar clause, the seller of a product impliedly warrants that the product is merchantable, Tex.Bus. & Com.Code Ann. § 2.314 (Tex. UCC) (Vernon 1968), and that the product is fit for the particular purpose for which it is sold, *Id.* at § 2.315.

[4]Even though the Court in *Pargas* recognized that, as a general rule, disclaimers of contractual warranties do not affect negligence claims, the Court found that Illinois, whose law it was construing, would not follow that rule. This is because, unlike most states, Illinois did not require a specific reference to negligence for a valid contractual disclaimer of a party's own negligence. *Id.*

By contrast, Texas does specifically require an express reference to negligence in a contractual disclaimer. *Ethyl Corp. v. Daniel Constr. Co.,* 725 S.W.2d 705, 708 (Tex.1987).

[5]The majority recognizes in Part IIB of its opinion that the contract did not meet the standards outlined in *Ethyl Corp.* However, it attempts an end run around these requirements seeking to reach the same result through the "as is" clause.

The majority is correct that this case must be reversed and remanded as the jury was not properly instructed as to the elements of premises liability.  However, in my view, the district court did not err in limiting the relevance of the "as is" clause.  Under Texas law, which we must follow, that clause did not affect the percentage of liability assigned to each defendant in this negligence action.  For this reason, this writer is compelled to dissent from Part IIB of the majority's opinion.

* * * * * *

* * * * * *

* * * * * *

* * * * * *